## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **GREG ALLEN, <u>et al.</u>,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 1:02-cv-0902** |
| **INTERNATIONAL TRUCK AND** | ) | |
| **ENGINE CORPORATION, f/k/a** | ) | **The Honorable Richard L. Young** |
| **NAVISTAR INTERNATIONAL** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CONSENT DECREE**</u>

## TABLE OF CONTENTS

I.     CASE HISTORY ...................................................................................................... 1

II.    DEFINITIONS ........................................................................................................ 5

III.   PURPOSE OF THE CONSENT DECREE ............................................................ 8

IV.    INJUNCTIVE RELIEF .......................................................................................... 8

V.     COMPLAINT PROCEDURES AND INVESTIGATIONS ................................. 10

VI.    TRAINING OF HUMAN RESOURCE PERSONNEL AND STAFF ............... 12

VII.   TRAINING OF SUPERVISORS AND MANAGERS ........................................ 14

VIII.  TRAINING OF ALL EMPLOYEES ................................................................... 15

IX.    OVERSIGHT COMMITTEE ............................................................................... 16

       A.     Organization And Operation ..................................................................... 17

              1.     Composition, Qualification And Selection Of The Oversight
                     Committee And Monitors ................................................................ 17

              2.     Compensation .................................................................................. 19

              3.     Access To Resources And The Duty Of ITEC And The Unions To
                     Cooperate ........................................................................................ 20

       B.     Review, Oversight And Implementation Of Policies, Practices And
              Procedures ................................................................................................. 21

       C.     Implementation .......................................................................................... 23

       D.     Oversight Function .................................................................................... 24

       E.     Review And Reporting Function ................................................................ 25

       F.     Monitoring And Reporting ......................................................................... 26

       G.     No Tolerance Policy .................................................................................. 29

X.     CLASS RELIEF .................................................................................................... 29

       A.     Notice Of Class Action And Statement Of Claim Form .......................... 29

       B.     Settlement Fund ......................................................................................... 32

       C.     Monetary Payments To Named Plaintiffs And Class Members ................ 35

i

       D.      Calculation Of Named Plaintiffs' And Class Members' Claims...........................35

       E.      Expedited Hearing Procedures For Resolution Of Class Members' Claims.........36

XI.    ATTORNEYS' FEES, EXPENSES AND COSTS...........................................................37

XII.   LIMITATION OF CLAIMS .......................................................................................38

XIII.  RETENTION OF JURISDICTION................................................................................39

XIV.  CONFIDENTIALITY OF AWARDS............................................................................40

XV.   MISCELLANEOUS....................................................................................................40

I.   **CASE HISTORY**

1.     On October 16, 2001, Plaintiffs Greg Allen, Mary L. Bronson, Lester Bullard, Robert Coleman, Jeannette L. Craig, James E. Farries, Robin Fouce, Patrick F. Freeman, Tiffany Harbour, James A. Harris, Dietra Hawkins, Ike Heflin, Donna Jackson, Harris W. Jenkins, Sr., Patricia Kelley, Gwendolyn Moore, Derrick Morgan, James Murphy, JoAnn Norris, Otis Riggins, Michael Ruggs, Ervin Stewart, Christi Simms, James L. Strong, Matthew Whitfield, Frank Wilson, and Freeman Young filed their Initial Complaint against International Truck and Engine Corporation ("ITEC"), on behalf of themselves and other current and former African-American employees, alleging, *inter alia*, claims under Title VII, 42 U.S.C. §2000e, *et seq.* and 42 U.S.C. §1981.  The Initial Complaint alleged that the Named Plaintiffs and other similarly-situated African-American employees had suffered and continued to suffer racial harassment and a hostile work environment at International Truck and Engine's Indianapolis Plant as well as racial discrimination.  It also alleged individual claims of the Named Plaintiffs for racial harassment, hostile work environment and discrimination in training, discipline, job assignments and other terms and conditions of employment.

2.     On December 20, 2001, the Named Plaintiffs and certain Chicago-area Plaintiffs (the "Chicago Plaintiffs") filed their First Amended Complaint.

3.     Both the Initial Complaint and First Amended Complaint were filed in the United States District Court for the Northern District of Illinois.

4.     On May 21, 2002, the Named Plaintiffs' claims were transferred to the United States District Court for the Southern District of Indiana.  The Named Plaintiffs filed a Second Amended Complaint on December 19, 2002.  The Chicago Plaintiffs were not included in the Second Amended Complaint.

5.      On September 9, 2003, the Court granted a motion by ITEC to join the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and its Local 98 (collectively, "the Unions") as non-aligned parties under Rule 19 (a) of the Federal Rules of Civil Procedure for purposes of relief only.  The Unions were not named as defendants in this litigation, and no claims against the Unions were made by plaintiffs or on behalf of the plaintiff class.

6.      After an interlocutory appeal on class certification issues, on July 28, 2004, the Court certified the hostile work environment class as a hybrid class consisting of an injunctive relief class under Rule 23(b)(2) and a monetary damages class under Rule 23(b)(3) for purposes of liability.

7.      Notices were previously sent to the Named Plaintiffs and Class Members, advising them of the fact that the class-wide claims of harassment and hostile environment were being certified and that class-wide claims of discrimination were not being certified, such that the tolling of the statute of limitations on the latter group of claims would cease as of the issuance of such notice.  The statute of limitations on the class-wide claims of discrimination thereby began to run on the issuance of such notice.

8.      On May 12, 2005, ITEC filed twenty-six (26) motions for summary judgment. The Court denied ITEC's motions on the individual hostile work environment claims, Donna Jackson's training claim, and Michael Ruggs' termination claim.  The Court granted summary judgment on the other individual claims, but because there was no Rule 54(b) certification, the time to appeal those rulings has not begun to run.  ITEC did not move for summary judgment on the class certified pattern and practice hostile environment claims or on Matthew Whitfield's hiring claim.

9.      On September 19, 2006, the phase one trial on the class certified pattern and practice racially hostile work environment claims commenced.  The trial continued through September 22, 2006.  On September 25, 2006, before the Plaintiffs had finished presenting their evidence, the Parties reached a monetary settlement and requested additional time to consummate a complete and final settlement of the non-monetary terms.  The Court ordered that the trial remain in recess until further notice to allow the parties to complete the settlement process.

10.      ITEC and the Named Plaintiffs, on behalf of themselves and as representatives of the Class, have engaged in settlement negotiations based upon the discovery conducted by the parties and the evidence presented and to be presented at trial.  The Unions participated in the settlement negotiations as a non-aligned party under Rule 19(a) of the Federal Rules of Civil Procedure in order to assist the Plaintiffs and ITEC to implement the non-monetary terms of this Decree in a manner consistent with the National Labor Relations Act and the Collective Bargaining Agreements between ITEC and the Unions.

11.      If it is given final approval by the Court, after notice and a fairness hearing, this Decree will resolve all class and individual claims of racial harassment and exposure to a racially-hostile work environment at International's Indianapolis Engine Plant.  This Consent Decree also resolves all of the individual claims of the Named Plaintiffs made or that could have been made in the Initial Complaint, First Amended Complaint, and Second Amended Complaint, except for (1) Donna Jackson's training claim; (2) Michael Ruggs' termination claim; (3) Matthew Whitfield's hiring claim; and (4) Gwen Moore's discipline claim which arose in connection with the meeting that occurred in late September of 2006.  As indicated by

3

the signature of counsel at the end of this document, the Parties have consented to the entry of this Decree.

12.     Throughout the negotiations leading to this Consent Decree, the Named Plaintiffs and Class Members have at all times been represented by competent counsel experienced in this type of class litigation.  Class Counsel is identified below.

13.     The Court has made no findings concerning ITEC's alleged violations of Title VII, 42 U.S.C. § 1981, or any other federal, state or local law, regulation, order or rule, and ITEC expressly denies any wrongdoing whatsoever. Accordingly, this Decree shall not constitute, and shall not be used in this or any other case or action as evidence of any violation of Title VII, 42 U.S.C. §1981, or any other federal, state or local law, regulation, order or rule. If for any reason settlement is not effectuated, no evidence of this Decree and/or the settlement agreement reached by the Parties shall be admissible for any purpose in this or any other action. By agreeing to and voluntarily entering into this Consent Decree, there is no admission by ITEC, express or implied, that International has in any way violated Title VII, 42 U.S.C. § 1981, or any other federal, state or local law, regulation, order or rule.  This Decree does not contain and will not be interpreted or construed to contain any such admission.  Moreover, this Decree shall not constitute an admission by ITEC as to the suitability for class action treatment of these and/or any other claims.  The Parties agree that they will not now or hereafter argue or contend that this Decree or the settlement agreement reached by the Parties can or should be treated as any such admission by ITEC.

14.     Extensive discovery and four days of trial on the merits have been conducted regarding the racial harassment and racially hostile work environment claims of the Named Plaintiffs and Class Members.  The Parties and the Unions are now desirous of implementing a

4

negotiated resolution of the issues raised in this litigation and of entering into a settlement that

is final and binding upon the Parties and the Unions without the necessity of further litigation.

All Parties, the Unions, and their counsel consent to the entry of this Consent Decree as a final

and binding settlement of this action.  Pursuant to this Court's Order, a Notice Of Hearing To

Consider And Approve Proposed Consent Decree ("Notice") and a copy of the proposed

Consent Decree have been given to all  Named Plaintiffs and Class Members.  The Court has

considered said Notice and finds that it satisfies the requirements of Rule 23 of the Federal

Rules of Civil Procedure.

      15.    This Court has also considered the terms of this Consent Decree and finds that

they are fair, reasonable, and just; that the rights of the Named Plaintiffs, the Class Members,

and such other persons as may be affected thereby, are fully protected by such Decree; that the

due process rights of all Named Plaintiffs and Class Members to adequate representation have

been satisfied; that this Consent Decree is in conformity with the Federal Rules of Civil

Procedure, and in particular with Federal Rule of Civil Procedure 23; and that this Decree is in

no way a deprivation of any rights, privileges or terms and conditions of employment of any

Named Plaintiff or Class Member.  Upon  due consideration of the provisions of this Consent

Decree, and of all of the records and proceedings in this case, it is hereby ORDERED,

ADJUDGED and DECREED as follows:

## II.    **DEFINITIONS**

      16.    When used in this Consent Decree, the following terms shall have the following

meanings:

      A.    "Attorney's Fee Fund" means $4,500,000 out of the Settlement Fund

placed in an interest-bearing account with ServisFirst Bank pursuant to Paragraph 62 of this

Consent Decree.

B.     "Audit Committee" means the Audit Committee of the Board of Directors of International Truck and Engine Corporation's parent corporation, Navistar International Corporation.

C.     "Board of Directors" means the Board of Directors of International Truck and Engine Corporation's parent corporation, Navistar International Corporation.

D.     "Chicago Plaintiffs" mean Oliver Dean and/or any other members of the proposed class of Chicago-area employees who were part of Case No. 01 C 7955 in the United States District Court for the Northern District of Illinois.

E.     "Claims Administrator" means Administar Services Group, Inc., the entity selected by Class Counsel to perform certain aspects of the administration of the Class Fund as set forth in this Consent Decree.

F.     "Class" or "Class Members" or "members of the class" means all African-American employees who, at any time since October 18, 1997 to the date of preliminary approval of this Consent Decree, have been employed at ITEC's Indianapolis, Indiana engine plant.

G.     "Class Counsel" or "Plaintiffs' Lead Counsel" means Samuel Fisher, Robert Childs, Jr., Rocco Calamusa, Jr., and Kevin Jent of Wiggins, Childs, Quinn & Pantazis, LLC, and Fay Clayton, Angel Krull, and Darlene Oliver of Robinson, Curley and Clayton, P.C.

H.     "Class Fund" means $4,500,000 out of the Settlement Fund placed in an interest-bearing trust account with ServisFirst Bank pursuant to Paragraphs 61 and 62 of this Consent Decree.

I.     "Consent Decree" or "Decree" means this Consent Decree entered in this case.

J.      "Court" means the Honorable Richard L. Young of the United States District Court for the Southern District of Indiana or his designee, unless otherwise indicated.

K.      "Defendant," "Company" or "ITEC" means Defendant International Truck and Engine Corporation and/or its predecessors, successors, affiliates, assigns, and any related or affiliated companies or other entities.

L.      "Final Approval Date" or "Final Approval" means thirty-five (35) days after entry of an Order by the Court finally approving the Consent Decree, if no appeal from such final approval is taken, or thirty-five (35) days after all appeals have been resolved in favor of the Consent Decree, whichever is later.

M.      "First Amended Complaint" means the complaint that Plaintiffs filed on December 20, 2001.

N.      "Indianapolis Plant" or "Plant" means International's Engine Plant located at 5565 Brookville Road, Indianapolis, IN 46219.

O.      "Initial Complaint" means the complaint that Plaintiffs filed on October 16, 2001.

P.      "Monitor" or "Monitors" means the two individuals selected to monitor the terms of this Consent Decree as set forth in Paragraph 35.

Q.      "Named Plaintiffs" means Greg Allen, Mary L. Bronson, Lester Bullard, Robert Coleman, Jeannette L. Craig, James E. Farries, Robin Fouce, Patrick F. Freeman, Tiffany Harbour, James A. Harris, Dietra Hawkins, Ike Heflin, Donna Jackson, Harris W. Jenkins, Sr., Patricia Kelley, Gwendolyn Moore, Derrick Morgan, James Murphy, JoAnn Norris, Otis Riggins, Michael Ruggs, Ervin Stewart, Christi Simms, James L. Strong, Matthew Whitfield, Frank Wilson, and Freeman Young.

R.     "Non-aligned Union Parties" means the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Locals 98 and 2274.

S.     "Party" or "Parties" means ITEC, Named Plaintiffs, and the Plaintiff Class.

T.     "Plaintiffs" means the Named Plaintiffs and Class Members as defined above.

U.     "Preliminary Approval Date" or "preliminary approval" means the date upon which preliminary approval of this Decree is granted by the Court.

V.     "Second Amended Complaint" means the complaint that Plaintiffs filed on December 19, 2002.

W.     "Unions" shall collectively mean The United Automobile Aerospace & Agricultural Implement Workers of America and its local unions, Local No. 98 and Local No. 2274.

## III.   **PURPOSE OF THE CONSENT DECREE**

17.     The purpose of this Consent Decree is to maintain a work environment at the Indianapolis Plant in which individuals of all races, ages, genders, national origin, religions, and ethnicities are treated fairly, with respect and dignity, so that they may fulfill their responsibilities and duties as employees as effectively as possible.  Harassment or retaliation in any form shall be absolutely prohibited.

## IV.   **INJUNCTIVE RELIEF**

18.     ITEC and its officers and the Unions and its officers are hereby:

A.     enjoined from taking any action which violates the terms of this Decree and from engaging in any employment practice that has the purpose or the effect of violating

8

the terms of this Decree, 42 U.S.C. Section 1981 or 42 U.S.C. Section 2000e, as they relate to race, respectively;

        B.     enjoined from engaging in, implementing or permitting any action, policy or practice which has the purpose or affect of retaliating against any current or former employee because of his/her participation as a party, claimant, witness or declarant in this action;

        C.     ordered to take reasonable steps to attempt to eradicate racial harassment at ITEC's Indianapolis, Indiana Engine Plant;

        D.     ITEC is ordered to take reasonable steps to maintain mechanisms for the reporting of alleged incidents of racial harassment at the Indianapolis Plant and to promptly investigate all such reports and take substantial disciplinary action up to and including termination;

        E.     ordered to implement reasonable rules, policies, practices, and/or procedures necessary to comply fully with all aspects of this injunction and Decree;

        F.     ordered to cooperate with and to implement the recommendations of the Oversight Committee and/or Monitors, subject to the provisions set forth in Paragraphs 41-45 and 52-53 of this Decree; and

        G.     ITEC is ordered to provide, as set forth in Paragraphs 26 through 30, mandatory training on racial discrimination and harassment for all of ITEC's salaried and hourly workers currently employed at the Indianapolis Plant and to provide such training for all new employees hired at the facility at any time during the term of this Decree.

## V.    COMPLAINT PROCEDURES AND INVESTIGATIONS

19.    ITEC agrees to provide employees at the Indianapolis Plant with mechanisms and procedures designed to provide those employees with convenient, confidential and reliable means for reporting incidents of race-based harassment, discrimination and/or retaliation.

20.    All complaints concerning alleged raced-based harassment, discrimination and/or retaliation at the Indianapolis Plant shall be promptly investigated.  Subject to approval and/or modification by the Oversight Committee, ITEC agrees that it shall make best efforts to have the investigations of all complaints of race-based harassment, discrimination and/or retaliation at the Indianapolis Plant completed within four (4) weeks.  ITEC will further make best efforts to have the written findings of the results of each investigation prepared and the remedial actions proposed, if any, within ten (10) days after completion of the investigation, and ITEC shall thereupon promptly communicate to the complaining party the results of the investigation and the remedial actions taken or proposed (if any), so long as the complainant agrees to keep any disciplinary action confidential.

21.    Subject to approval and/or modification by the Oversight Committee, the following procedures will be utilized in investigating allegations of race-based harassment, discrimination and/or retaliation at the Indianapolis Plant:

A.    All interviews of complainants, alleged harassers and witnesses will be conducted in person, except in specific circumstances where it is not feasible to do so.  In the event that an in-person interview of a complainant, alleged harasser or witness is not feasible, it shall be set forth in the written report for that investigation the reason or reasons why such was not feasible.  The individual being interviewed will be given the option to have the interview audio recorded.

B.    Interview notes will be summarized in memorandum form ("interview memorandum"), and the interviewee will be asked to review the interview memorandum for accuracy.  The witness will be given an opportunity to add information he or she believes should be included in the interview memorandum.  Interviewed persons will be asked to sign the interview memorandum certifying they have reviewed the notes for accuracy and completeness and been given an opportunity to add information.  The interview notes and audio recordings will be maintained with the interview memorandum.

C.    All interviewed persons will be asked to identify potentially corroborating or contradictory witnesses, and those named witnesses will be interviewed in the same manner as described in Subsections A and B above.

D.    The written reports will contain credibility assessments if, in the determination of the interviewer, such an assessment is possible.  If a credibility assessment is made, the basis for that assessment will be provided in the report.  If a credibility assessment is not made, the reasons for not making such an assessment will be provided in the report.

E.    A record-keeping system will be maintained that can be used to identify complaining parties, accused parties, witnesses interviewed, investigators' recommendations and actions taken.

F.    The Parties and Non-Aligned Union Parties agree that the complaint procedure shall include the power to order during the pendency of the investigations, the immediate temporary transfer of the persons accused of having violated ITEC's harassment/discrimination policy during the pendency of the investigation.  Where possible, such transfers will be in line with seniority.  Permanent transfers may be effected as a remedy for violations of ITEC's harassment/discrimination policy by agreement between ITEC and the

11

Unions.  If no agreement is reached, ITEC may initiate a permanent transfer, but such action

shall be subject to challenge by the Unions through the grievance/arbitration procedure of the

Collective Bargaining Agreements.

22.    ITEC will maintain for the Indianapolis Plant records of all complaints,

investigations and all actions taken in response to these complaints.  These records will be

made available to the Monitors and Oversight Committee immediately upon receipt of the

complaint, upon completion of the investigation, and upon request.

23.    ITEC shall ensure that adequate mechanisms are in place at the Indianapolis

Plant for the reporting of alleged incidents of racial harassment and/or discrimination.  These

mechanisms shall be described in reasonable detail in postings throughout the facility.

24.    Nothing contained herein shall be construed so as to negate or limit ITEC's

obligation to remain mindful of the rights of all persons (including the accuser, the accused and

all witnesses) in the conduct of the foregoing investigations and the imposition of discipline as

it is deemed necessary and appropriate.

25.    Subject to approval and/or modification by the Oversight Committee, the

mechanisms provided shall allow for employees at the Indianapolis Plant to make confidential

complaints of alleged racial harassment and/or discrimination to the Human Resources

Department at the Indianapolis Plant and/or to a toll-free number.  Employees shall be

instructed that they may also make complaints to their supervisors and managers, but they will

be instructed and encouraged to also make all such complaints to the Human Resources

Department and/or the designated toll-free number.

## VI.    TRAINING OF HUMAN RESOURCE PERSONNEL AND STAFF

26.    Within ninety (90) days after Final Approval of this Consent Decree, ITEC will

develop and present training programs for all Human Resources personnel and staff at the

Indianapolis Plant on racial harassment, discrimination, diversity, retaliation, equal employment opportunity, and promoting a positive work environment. Such training program will be re-administered yearly at the Indianapolis Plant thereafter during the term of the Consent Decree. New Human Resource personnel and staff members at the Indianapolis Plant shall receive the foregoing training within thirty (30) days of their date of entry into a Human Resource position, and any other individuals retained by ITEC to assist in the investigation of reports and complaints at the Indianapolis Plant shall likewise receive such training. Thereafter, this training will be provided every year during the term of this Decree to all persons involved in the investigation of alleged incidents of racial harassment and/or discrimination at the Indianapolis Plant.

      27.    Training for the persons identified in Paragraph 26 shall include, but not be limited to: (i) Federal and State equal employment opportunity laws; (ii) the application of equal employment opportunity laws to typical employment situations; (iii) developing a racially-neutral and positive work environment; (iv) compliance with this Decree; (v) the role and responsibility of the Human Resource Department and its personnel and staff; (vi) diversity; (vii) the handling of EEO complaints, including the prohibition against racial harassment, discrimination and retaliation; and (viii) any other topics which may encourage equal employment for all employees. Such training shall be at least two (2) hours in duration and shall be conducted by experienced trainers knowledgeable about the problems of racial harassment, a racially-hostile work environment, discrimination and retaliation and the techniques for investigating and stopping such problems. Such training shall be introduced by a senior management official who shall communicate ITEC's commitment to non-discrimination and anti-harassment policies and may be delivered in live "discussion" format, video format,

13

written materials, or any combination of these or other formats, provided, however, that any

such training shall not be provided to participants solely through written materials.  Attendance

at such training shall be mandatory. For the duration of the Consent Decree, ITEC agrees to

maintain records of (a) the persons attending this training, (b) the date of such attendance and

(c) the subjects covered and materials used in such training.

## VII.   TRAINING OF SUPERVISORS AND MANAGERS

28.     Starting within 90 days following Final Approval of this Decree, all supervisors

and managers at the Indianapolis Plant shall receive training, to include the following topics:

(i) compliance with this Decree; (ii) equal employment opportunity, (iii) diversity; (iv) federal,

state and ITEC prohibitions of work place racial discrimination, harassment and retaliation;

(v) developing a racially-neutral and positive work environment; (vi) handling of EEO

complaints, including the prohibition against racial harassment and retaliation; and (vii) any

other topics that may encourage equal employment for all employees.  Such training shall be at

least two (2) hours in duration and shall be conducted by experienced trainers knowledgeable

about the problems of racial harassment and a racially-hostile work environment and the

techniques for investigating and stopping such problems. Such training shall be introduced by a

senior management official who shall communicate ITEC's commitment to anti-harassment

policies and may be delivered in live "discussion" format, video format, written materials, or

any combination of these or other formats, provided, however, that any such training shall not

be provided to participants solely through written materials.  New supervisors and managers at

the Indianapolis Plant will receive such training within forty-five (45) days of their entry into a

supervisory or management position.  Thereafter, this training will be provided every year

during the term of this Decree to all supervisors and managers.  Attendance at such training

shall be mandatory. For the duration of the Consent Decree, ITEC agrees to maintain records of

14

(a) the supervisors and managers attending this training, (b) the date of such attendance and (c) the subjects covered and materials used in such training.

## VIII.   <u>TRAINING OF ALL EMPLOYEES</u>

29.     Starting within 90 days following Final Approval of this Decree, all ITEC employees at the Indianapolis Plant shall receive training, to include the following topics: (i) equal employment opportunity; (ii) diversity; (iii) federal, state and ITEC prohibitions of work place racial discrimination, harassment and retaliation; (iv) developing a racially-neutral and positive work environment; (v) ITEC's policies and procedures as to racial harassment and retaliation; and (vi) any other topics that may encourage equal employment for all employees. Such training shall be at least two (2) hours in duration and shall be conducted by experienced trainers knowledgeable about the problems of racial harassment and a racially-hostile work environment and the techniques for investigating and stopping such problems. Such training shall be introduced by a senior management official who shall communicate ITEC's commitment to anti-harassment policies and may be delivered in live "discussion" format, video format, written materials, or any combination of these or other formats, provided, however, that any such training shall not be provided to participants solely through written materials.  New employees at the Indianapolis Plant will receive such training within thirty (30) days of their commencing work at the Indianapolis Plant.  Thereafter, this training will be provided every year during the term of this Decree to all employees at the Indianapolis Plant. Attendance at such training shall be mandatory. For the duration of the Consent Decree, ITEC agrees to maintain records of (a) the employees attending this training, (b) the date of such attendance, and (3) the subjects covered and materials used in such training.

30.     Employees at the Indianapolis Plant who receive training pursuant to the

provisions of Paragraphs 26 and 27 and/or Paragraph 28 above shall not be required to receive

the training called for by Paragraph 29.

## IX.    OVERSIGHT COMMITTEE

31.     An independent Oversight Committee ("Committee" or "OC") shall be

established to ensure fair, equitable and effective implementation by ITEC of the terms of this

Decree and to provide independent oversight of the Company's diversity efforts pertaining to

the Indianapolis Plant and its commitment to long-term compliance with the purpose and spirit

of this Decree.  The Oversight Committee's mandate shall require an evaluation of whether

ITEC's human resources policies, practices and procedures pertaining to the Indianapolis Plant

(including its investigation and resolution of complaints of alleged racial harassment, racial

graffiti, racial slurs, retaliation and other terms and conditions of employment) are fair,

equitable and reasonable for all employees at the Indianapolis Plant, and the development of

safeguards to ensure that such policies, practices and procedures are followed at the

Indianapolis Plant.  Consistent with the foregoing mandate, the Oversight Committee shall have

the authority to determine reasonable revisions and additions as necessary to ITEC's human

resources policies, practices and procedures at the Indianapolis Plant.

32.     The members of the Oversight Committee shall be named and assume their

duties on the earliest practicable date. In no event shall these appointments be made more than

ninety (90) days after the Final Approval Date.  In the event that the Oversight Committee does

not assume its duties on or near the Final Approval Date, all dates in reference to the Oversight

Committee, and not the term of the decree itself, shall be adjusted to reflect the actual dates the

Oversight Committee is established.

33.    The Oversight Committee will have authority for a period of five (5) years to review and monitor ITEC's policies, practices, and procedures pertaining to the Indianapolis Plant and ITEC's compliance with the objectives, intent and purposes of this Consent Decree, subject to the Court's oversight.  For two (2) years after its establishment pursuant to Paragraph 32, the Oversight Committee shall review and assess the status of ITEC's compliance with the objectives, intent and purposes of the Consent Decree.  If after such review and assessment, the majority of the Oversight Committee believe that ITEC is in compliance with the objectives, intent and purposes of the Decree, the five member Oversight Committee will be recessed, and the two Monitors will continue to perform the monitoring functions set forth in this Decree for the remaining three (3) years of the Consent Decree.  During this three (3) year period, the Monitors may reconvene the Oversight Committee, at their sole discretion if they deem it necessary to do so.  If so reconvened by the Monitors, the Oversight Committee will meet at the date and time designated by the Monitors, unless ITEC obtains an Order from the Court preventing such reconvening.  The burdens set forth in Paragraph 39 of this Decree shall apply to ITEC in obtaining any such Order.  The Parties may agree to extend the term of the Oversight Committee, or the Court may order the term extended upon petition by the Class Representatives, Class Counsel, or ITEC for good cause shown.

**A.     Organization And Operation**

**1.     Composition, Qualification And Selection Of The Oversight Committee And Monitors**

34.    During the Term of this Decree, the Oversight Committee will have five (5) members with diverse racial and/or cultural backgrounds.  Class Counsel will appoint three (3) members and ITEC two (2) members to serve on the Oversight Committee, subject to approval and appointment by the Court.  The members so selected will, in turn, agree upon and select

17

one of their members to serve as Chairperson of the Oversight Committee. The Oversight Committee members will not be shareholders, directors, officers, managers or employees of ITEC and will not be related by blood or marriage to any of the Parties or to any shareholder, director, officer or manager of ITEC. The nominees to the Oversight Committee will come from one or more of the following career categories: current or former CEOs, COOs, officials or high level managers in the private business sector; current or former government officials in the labor/civil rights area or with other relevant experience; professors/academics specializing in the labor/employment field; professional human resources/diversity consultants; legal profession, including former judiciary, knowledgeable and experienced in employment discrimination/diversity issues; or private business with sufficient practical experience in management of a diverse workforce, including senior managers or administrators of nonprofit, educational or government institutions. All Oversight Committee members will be approved and sworn in by the Court. Should any Oversight Committee member or Monitor be unable to fulfill their duties and responsibilities for any reason, the Party who nominated the Committee member or Monitor shall promptly appoint their replacement, who will also be approved and sworn in by the Court.

35.    Two (2) individuals will act as Monitors under the Consent Decree. Class counsel will nominate to the Court two (2) individuals to serve as Monitors, and the Court will appoint the two (2) Monitors from those nominated by Class Counsel. ITEC shall have the right to file with the Court and Class Counsel reasonable, well-founded, confidential objections to one or more of the persons nominated by Class Counsel to serve as Monitors, and Class Counsel has the right to file a confidential response to any objections by ITEC. Notwithstanding ITEC's right to file reasonable and well-founded objections, the selection and

appointment of the two Monitors is within the discretion of the Court. The Monitors shall be sworn in by the Court and will remain in place throughout the entire five (5) year period of this Consent Decree and any extension thereof. The Monitors may also be members of the Oversight Committee.

36.     At the conclusion of the five (5) year period of this Consent Decree, Class Counsel may petition the Court for an extension of the Decree for one (1) year. In such event, the burden will be on the Class and Class Counsel to demonstrate by a preponderance of the evidence that ITEC has materially failed to comply with the terms of this Consent Decree and that an extension of one (1) year or less is necessary. If such an extension is granted in whole or in part by the Court, Class Counsel may petition the Court for an additional extension of up to one (1) year, with the burden on the Class and Class Counsel to demonstrate by a preponderance of the evidence that any additional extension is necessary notwithstanding the earlier extension.

## 2.     Compensation

37.     ITEC shall compensate the Oversight Committee members and its Monitors for their services. The Parties have agreed that the members of the Oversight Committee shall be entitled to a maximum of $800,000 for their services during the first two years of the Decree. This amount includes all fees of the members and staff and any consultants and experts the Oversight Committee may choose to utilize. This amount does not include any compensation and expense of the Monitors throughout the life of this Decree or any attorneys' fees or expenses related to services rendered on behalf of the Oversight Committee, the Monitors, or for enforcement of any term of this Decree. In addition, this amount does not include fees and costs of the Oversight Committee incurred as a direct result of matters brought before the Court or an Arbitrator by the Oversight Committee, ITEC, the Unions, or Class Counsel. ITEC shall

compensate the Monitors and the Oversight Committee for their services at hourly rates commensurate with their normal professional rates.  Class Counsel and ITEC shall agree on the rates.  If they are unable to agree on the rates to be paid, the Court will set the rates.  If after the first two years, the Oversight Committee is reconvened at anytime during the life of the Decree, ITEC shall compensate the Oversight Committee for their services at hourly rates commensurate with their normal professional rates.

38.     Billing statements will be submitted to ITEC by the members of the Oversight Committee and the Monitors on at least a monthly basis.  These statements shall specify with a reasonable degree of particularity the work performed for which payment is being sought from ITEC.

39.     To the extent the Monitors and/or Oversight Committee engage in activities that ITEC believes to be unreasonable, unnecessary, and/or not reasonably calculated to the achievement of the ends of this Consent Decree, ITEC shall have the right to petition the Court for relief, with the burden being on ITEC in the event any such petition is filed.

### 3.     Access To Resources And The Duty Of ITEC And The Unions To Cooperate

40.     In fulfilling their duties and responsibilities, the Oversight Committee and the Monitors will have full access to all of the resources and records pertaining to the Indianapolis Plant, including its Human Resources Division and Corporate Security (Loss Prevention). ITEC has a duty to cooperate with the Oversight Committee's and the Monitors' requests for any information.  The Non-Aligned Union Parties will cooperate with the Oversight Committee/Monitors consistent with the Unions' rights and duties under the Collective Bargaining Agreements and the National Labor Relations Act.  If ITEC or the Unions believe

that any request for information or resources is unreasonable, ITEC or the Unions may petition

the Court for relief, subject to the burdens set forth herein.

**B.     Review, Oversight And Implementation Of Policies, Practices And Procedures**

41.     The Oversight Committee's powers and duties shall consist of the following:

A.     The evaluation of existing policies, practices, procedures and programs pertaining to the Indianapolis Plant for the detection, investigation and prevention of racial harassment and racial work environment; the development and design of policies, practices, procedures and programs necessary to achieve the objectives of this Decree; and the implementation, measurement, evaluation and guidance of the progress and results of all such policies, practices, procedures and programs pertaining to the Indianapolis Plant.

B.     The Oversight Committee shall have authority to review, initiate, oversee and monitor ITEC's implementation of any reforms of its EEO and Human Resources policies, practices, procedures and programs pertaining to the Indianapolis Plant in order to ensure that ITEC's reforms are consistent with the goals, intent and objectives contained in this Decree.  Except as otherwise provided in this Decree, ITEC is not precluded from developing and implementing such additional policies, practices, procedures and programs as it may find appropriate and as are consistent with the Collective Bargaining Agreements. The Oversight Committee shall take those programs into account in formulating its own recommendations. The Oversight Committee will evaluate and monitor the effectiveness of all of the programmatic changes implemented by ITEC pertaining to the Indianapolis Plant during the term of this Decree, subject to the timetable set forth in Paragraph 33.

C.     ITEC has ninety (90) days from the Final Approval Date to review, develop and present to the Oversight Committee its evaluation and recommendations regarding

21

its racial harassment, discrimination and retaliation policies, practices, procedures and programs pertaining to the Indianapolis Plant.

      D.    The Oversight Committee has the right to accept or reject any recommendations made by ITEC pursuant to Paragraph 41(c). The Oversight Committee shall also have the right to propose new policies, practices and procedures it deems necessary to fulfill its mandate. In the event the Oversight Committee rejects a recommendation made by ITEC or proposes a modification thereto, the Oversight Committee shall state in writing the reason or reasons for its rejection or recommendation.

      E.    After conferring with ITEC and the Unions, the Oversight Committee will recommend a reasonable timetable for the implementation and completion of all revisions or additions to ITEC's existing employment policies, practices, procedures, and programs, subject to the terms of this Decree. The Oversight Committee shall monitor and report on ITEC's progress in implementing the terms of the Decree against this timetable. Any deadline(s) for implementation or completion may be changed by the Committee only for good cause shown, but all such deadlines are subject to review by the Court upon petition by ITEC and/or the Unions.

      F.    The Oversight Committee will work in conjunction with the Vice President of Human Resources (or the equivalent officer or his or her designee) to the extent feasible in exercising its authority under the Decree, except where (1) such cooperation would jeopardize the Oversight Committee's duty to objectively monitor implementation of the terms of the Decree, or (2) such cooperation would interfere with the independent investigative or reporting functions of the Oversight Committee.

**C.     Implementation**

42.     ITEC will implement each Oversight Committee recommendation unless it obtains judicial relief as set forth below in this paragraph or the Unions object that the recommendation of the Oversight Committee conflicts with the existing Collective Bargaining Agreements, in which case the procedures as set forth in Paragraph 43 below will be followed. To obtain judicial relief, ITEC must demonstrate by a preponderance of the evidence that the Oversight Committee's recommendation, in whole or in part, involves the application of unsound business judgment, is impractical, is counterproductive, is technically not feasible, and/or imposes an unreasonable financial burden.

43.     If the Unions have a good faith belief that a recommendation of the Oversight Committee conflicts with the existing Collective Bargaining Agreements, the Unions may initiate a grievance under the grievance-arbitration procedures of the Collective Bargaining Agreements. Within ten (10) days of receiving the Oversight Committee's recommendation, the Unions will send a copy of the grievance which specifies the provisions of the Collective Bargaining Agreement that the Oversight Committee recommendation implicates to the Oversight Committee and Class Counsel. The Unions will then wait seven (7) days from the date they send the grievance to the Oversight Committee and Class Counsel before they file the grievance with the Company. If the Unions initiate such a grievance, ITEC's duty to implement the recommendation of the Oversight Committee will be deferred for a period up to sixty (60) days from the date the grievance is filed while the grievance is processed through the procedures under the Collective Bargaining Agreements. ITEC and the Unions agree to expedite the grievance-arbitration procedure to effect resolution of the grievance, including, if necessary, arbitration of the grievance within the sixty (60) day period. The Oversight

Committee and/or Class Counsel have the right to challenge the resolution of the grievance in Court, including whether the Unions have acted in good faith.

44.     If ITEC believes that it should not have to implement an Oversight Committee recommendation for the reasons set forth in Paragraph 42 above while a petition for judicial relief is pending, it will, at the same time a petition for judicial relief is filed, move the Court for a stay of the recommendation.  In the event such a Stay Motion is filed, ITEC will not be obligated to implement the disputed recommendation until ten (10) days after denial of the Stay Motion.

45.     The Oversight Committee may retain counsel of its choosing, including but not limited to Class Counsel, to represent it in any proceedings with the Court in support of any of its recommendations that are objected to by ITEC and/or the Unions.  ITEC will reimburse the Oversight Committee's retained counsel for reasonable and necessary attorneys' fees and costs incurred by Counsel in responding to ITEC's or the Unions' petition.

**D.     Oversight Function**

46.     The Oversight Committee and the Monitors will have reasonable access to all relevant information, including data, documents, business records and other sources of information pertaining to the Indianapolis Plant that are necessary or appropriate for the exercise of their oversight duties and responsibilities, in whatever form the information is maintained, and regardless of whether the information is at the Indianapolis Plant, Corporate Headquarters or any other location of ITEC.  Given the need of the Oversight Committee and Monitors to review ITEC's confidential business information, each Oversight Committee member and Monitor will sign a mutually-agreeable Confidentiality Agreement, which will be subject to judicial enforcement.  The Court will retain jurisdiction to enforce this Confidentiality Agreement as well as other provisions of this Decree.

47.     The Oversight Committee and the Monitors may communicate directly with the

Unions, their officers and members and with any ITEC officer or employee in any manner that

aids the Oversight Committee and Monitors in performing their duties, including

communication solely with supervisors and members of the Class. The Oversight Committee

and Monitors may engage in this direct communication in order to ensure that ITEC makes any

appropriate reforms of its human resources policies and practices and to ensure that the

Oversight Committee and its Monitors carry out their reporting and monitoring functions

objectively.  Any such communications by the Oversight Committee and/or the Monitors shall

be with due regard for the attorney-client privilege and/or the work-product doctrine.  A union

member will have the right to a union representative present if interviewed by an Oversight

Committee member and/or Monitor.

**E.      Review And Reporting Function**

48.     Within six months after the Oversight Committee receives from ITEC the

evaluation and recommendations referenced in Paragraph 41(c), the Oversight Committee will

complete its initial review of ITEC's policies, practices, procedures and programs pertaining to

the Indianapolis Plant regarding racial harassment, discrimination and the work environment

and ITEC's compliance with the objectives and terms of this Consent Decree. At that time, the

Oversight Committee will submit an initial report to the Audit Committee of the Board of

Directors, to the Court, to ITEC's Counsel, to the Unions' Counsel and to Class Counsel.  The

initial report will include a review and evaluation of ITEC's employment and Human

Resources policies, practices, procedures and programs pertaining to the Indianapolis Plant and

any perceived deficiencies in same, any reforms implemented since the preliminary approval

date, all recommendations made by the Oversight Committee, and ITEC's compliance with the

objectives and terms of this Decree.  The report will also identify and explain whatever goals or

objectives the Oversight Committee believes should be accomplished by ITEC and a recommended timetable for accomplishment.  Thereafter, for the duration of the term of this Decree, the Oversight Committee and/or the Monitors will be responsible for continuing the review and evaluation of all ongoing employment policies and practices of ITEC pertaining to the Indianapolis Plant that impact the objectives and terms of this Decree, as well as monitoring the impact and effectiveness of the revisions and additions to such policies and practices. Subject to the timeline set forth in Paragraph 33, the Oversight Committee will continue during this time to recommend revisions or modifications to ongoing employment and Human Resources policies, practices, procedures and programs pertaining to the Indianapolis Plant in order to achieve the objections and terms of the Decree.

49.     The Oversight Committee and/or the Monitors, as appropriate, shall submit to ITEC, the Unions and Class Counsel, at least one formal written report each year, and may provide further informal or additional interim reports as are reasonably necessary.  The Oversight Committee may establish a website, at ITEC's expense, containing information about the Oversight Committee and/or Monitors.  ITEC shall post at the Indianapolis Plant information to apprise employees of the aforementioned website.  The Oversight Committee's and/or Monitors' formal annual reports will be made available on the website.  The chair or another representative of the Oversight Committee and/or Monitors shall also make an annual in-person report to the Audit Committee of the Board of Directors on the topics contained in the annual written reports.

### F.     Monitoring And Reporting

50.     The Monitors shall remain in place throughout the term of this Decree.  The duties of the Monitors shall consist of the following:

26

A.      Monitoring the development, establishment and implementation of the
training for supervisor and manager positions as addressed in Paragraph 28;

B.      Monitoring the development, establishment and implementation of the
training for Human Resources personnel positions as addressed in Paragraphs 26 and 27;

C.      Monitoring the development, establishment and implementation of the
training for all non-management employees as addressed in Paragraph 29;

D.      Monitoring the processing, investigation, and decision-making regarding
any incident of racial harassment, racial discrimination, racially hostile work environment, or
retaliation at the Indianapolis Plant;

E.      Monitoring the investigation of reports of alleged racial harassment,
racial discrimination, and retaliation at the Indianapolis Plant and the discipline (if any)
imposed upon the conclusion of such investigations;

F.      Monitoring ITEC's compliance with the other substantive provisions
identified in Paragraphs 18 through 25 of this decree; and

G.      Monitoring the annual reporting and meeting requirements as addressed
in Paragraph s 48 and 49.

51.     In order to carry out their duties and mandate as set forth hereinabove, the
Monitors will have access to any and all of ITEC's relevant data, documents, business records
and employees (including management employees) pertaining to the Indianapolis Plant as they
deem necessary to the proper performance of these duties. This access will include, but not be
limited to, all company investigations, findings, employees, and interviewees. The Monitors
shall have the right to talk with and interview all witnesses interviewed by the Company, all

additional witnesses they deem appropriate, and to review any other ITEC data or documents necessary to carry out their duties and mandate.

52.    The Monitors shall also have the authority to review ITEC's findings and recommendations regarding any alleged incident of racial harassment, discrimination or retaliation at the Indianapolis Plant as well as any discipline proposed, and after consultation with the Unions, they shall have the authority to recommend to ITEC discipline other than what ITEC proposes to take in connection with any investigation of an alleged incident of racial harassment. The decision of the Monitors in this regard will be implemented by the Company subject to provisions of Paragraph 53. ITEC and/or the Unions may petition the Court for a Stay and/or a Court Order overruling or modifying the decision of the Monitors.

53.    Nothing in this Decree limits the rights of employees or their Unions to file a grievance under the Collective Bargaining Agreements, for matters related to the preceding paragraph. In the event any disciplinary action taken by ITEC is overturned by an arbitrator as the result of a grievance, the decision of the arbitrator shall, to the extent required by law, be final and binding, and ITEC shall fully discharge its obligations under this Consent Decree by implementing the decision of the arbitrator, unless said decision is subsequently overturned, set aside or modified by the Court. The Parties to this Decree recognize that the Unions and ITEC have certain obligations under the National Labor Relations Act. This Decree will be administered consistent with federal labor and employment laws.

54.    The Monitors agree that they will make themselves available for purposes of any grievance process resulting in whole or in part from any disciplinary recommendation made by the Monitors, and they agree to participate in such process and to fully support their recommendation as appropriate.

### G.    No Tolerance Policy

55.    ITEC shall institute a no-tolerance policy that will require that all allegations of racial harassment, discrimination, or retaliation be immediately and thoroughly investigated and that proven violations will result in substantial discipline up to and including termination. The no-tolerance policy will also include a provision ensuring that when ITEC suspects an employee of being involved in racial discrimination or harassment but against whom such allegations cannot be proven, such incident will be documented in the suspected employee's personnel file and will be kept for a minimum of seven (7) years.  However, consistent with the Collective Bargaining Agreements, such incident will not be used for discipline after two (2) years.  The no-tolerance policy will include a provision that supervisors and managers will receive substantial discipline up to and including termination for failing to report any racial harassment, discrimination, or retaliation of which they become aware.  The no-tolerance policy will strictly prohibit retaliation based on any report or allegation of racial harassment/discrimination, or against any witness who cooperates or provides evidence in any investigation or proceeding related to a complaint or charge of racial discrimination or racial harassment.  The Oversight Committee and its Monitors, at their discretion, may monitor any investigation involving the no-tolerance policy and its results, or conduct its own investigation of racial incidents.

### X.    CLASS RELIEF

### A.    Notice Of Class Action And Statement Of Claim Form

56.    Within twenty (20) days of the preliminary approval of this Consent Decree, ITEC will provide to the Claims Administrator an electronic list, in the format desired by the Claims Administrator, of the last-known name and address of each Named Plaintiff and Class Member.  This list will be verified under oath by ITEC as being a true and correct list of the

29

last-known addresses of all Named Plaintiffs and Class Members covered by the terms of this

Consent Decree.  The Claims Administrator will then mail, by first-class mail, the "Notice of

Hearing to Consider and Approve Proposed Consent Decree" and a "Statement of Claim Form"

(Exhibits "A" and "B", respectively) to each Named Plaintiff and Class Member.[1]  To receive

any monetary relief under this Decree for racial harassment and/or the exposure to a racially-

hostile work environment at ITEC's Indianapolis Plant up to the date the Court preliminarily

approves the Consent Decree, Named Plaintiffs and Class Members must complete and submit

a Statement of Claim Form.  Said Form must be postmarked on or before May 21, 2007 and

must be received by the Claims Administrator at Administer Services Group, Inc.  The failure

of a Named Plaintiff or Class Member to fill out all sections of the Statement of Claim Form

and to timely submit this Form as set forth above may result in the loss of all monetary relief

due to said Named Plaintiff or Class Member under this Decree, unless the Named Plaintiff or

Class Member demonstrates that he/she was prevented from completely filling out or timely

filing the Statement of Claim Form by circumstances beyond his/her control.  The Statement of

Claim Form should be mailed to:

> Claims Administrator
> Administar Services Group, Inc.
> P.O. Box 56380
> Jacksonville, Florida 32241-6380

57.    It is the responsibility of each Named Plaintiff and Class Member to ensure that

their Statement of Claim Form is completely filled out, is timely postmarked and is received by

the Claims Administrator at Administar Services Group, Inc.

---

[1]    If a Notice to a Class Member is returned undeliverable, the Claims Administrator shall
attempt to trace the individual by using the Class Member's Social Security number (if
available) via on-line/internet search providers. Notice shall then be mailed to the most likely
address obtained through such tracing.

58.     Any Class Member may request to opt-out or be excluded from the settlement

embodied in this Consent Decree.  Any such notice to opt-out must be postmarked on or before

May 21, 2007 and must be received by the Clerk of the United States District Court for the

Southern District of Indiana, Indianapolis Division, at the following address:

> Clerk, United States District Court
> Southern District of Indiana, Indianapolis Division
> 46 East Ohio, Room 105
> Indianapolis, Indiana  46204

59.     It is the responsibility of each Named Plaintiff and each Class Member desiring

to opt-out of this Consent Decree to ensure that his/her opt-out is timely postmarked and is

received by the Clerk of the United States District Court for the Southern District of Indiana,

Indianapolis Division.  All claims of racial harassment and/or exposure to a racially-hostile

work environment by any Named Plaintiff or Class Member who does not opt-out of this

Consent Decree will be deemed to be conclusively resolved through the procedures and

remedies set forth in this Decree, and such persons will be forever barred from pursuing any

such claims against ITEC at its Indianapolis engine plant up to the date of the final approval of

this Decree.

60.     In the event that more than twenty (20) members of the Class (exclusive of the

Named Plaintiffs) or more than five (5) Named Plaintiffs elect to "opt-out" for purposes of

participation in the monetary portion of this settlement, ITEC may, at its option, void the

settlement agreement reached by the Parties and the Consent Decree, provided, however, that

any person who "opts-out" but affirmatively indicates that his/her sole reason for doing so is

his/her belief that he/she has suffered no racial harassment and race-based discrimination shall

not be counted in the opt-out group for purposes of this paragraph.  ITEC shall notify Class

Counsel of its decision to void this Decree at least ten (10) days prior to the date set for the

31

Final Approval hearing.  In the event that ITEC elects to void this Decree, ITEC shall notify

Class Counsel of its decision; however, it shall have no further obligations under this Decree,

and all monies (including, without limitation, any attorneys' fees) paid pursuant to this Decree

or placed in an account by ITEC (including all interest accrued) shall be immediately refunded

or released to ITEC.

**B.     Settlement Fund**

61.     On October 6, 2006, ITEC deposited the sum of Nine Million and 00/100

Dollars ($9,000,000.00) into two equal interest-bearing trust accounts of Four Million Five

Hundred Thousand and 00/100 Dollars ($4,500,000.00) each at ServisFirst Bank in

Birmingham, Alabama, one in the name of "Wiggins, Childs, Quinn & Pantazis, LLC and

Robinson, Curley & Clayton, P. C., as counsel and trustees for the Named Plaintiffs and class

members" (hereinafter the "Class Fund") and one in the name of "Wiggins, Childs, Quinn &

Pantazis, LLC. and Robinson, Curley & Clayton, P. C., as trustees for Plaintiffs' Lead

Counsel" (hereinafter "Attorneys' Fee Fund").  Collectively, these funds, plus all interest

earned on these funds, shall hereinafter be referred to as the "Settlement Fund."  If this Decree

is not ultimately approved, ITEC will be entitled to the prompt and complete reimbursement of

all sums deposited into the Settlement Fund, including all interest earned thereon.  In the

interim between deposit and withdrawal, the Class Fund and the Attorneys' Fee Fund will

accumulate interest at the market rate paid for such deposits.  The interest earned by the Class

Fund and the Attorneys' Fees Fund from date of deposit until the final approval of this matter

will be paid to the Named Plaintiffs/Class Members and Plaintiffs' Lead Counsel, respectively,

as set forth in this Decree.  ITEC's obligation with respect to these Funds were met in full upon

receipt by ServisFirst Bank of the above-referenced $9,000,000.00, which receipt occurred on

October 6, 2006.

62.    Lead Counsel for the Plaintiffs are hereby specifically authorized and directed to pay Four Million, Five Hundred Thousand and 00/100 Dollars ($4,500,000.00), from the Settlement Fund into the Class Fund, as monetary relief to the Named Plaintiffs and Class Members, together with accrued interest, and Four Million, Five Hundred Thousand and 00/100 Dollars ($4,500,000.00) from the Settlement Fund into the Attorneys' Fees Fund, together with accrued interest, as attorneys' fees, costs and expenses in this case, in accordance with the foregoing paragraph and are held harmless to any and all persons for the use and payment of the total sum deposited in accordance with the terms of his Decree.  The total monetary relief to be paid to each Named Plaintiff and Class Member filling out and timely filing a Statement of Claim Form in this case shall be within the sole and exclusive judgment of the Claims Administrator.  Other than as set forth in this paragraph, ITEC and its employees and counsel are held harmless for the payment of any monetary relief hereunder, including the Plaintiffs' attorneys' fees, costs and expenses.

63.    All distributions from the Class Fund to a Named Plaintiff or Class Member, shall be allocated as follows:  One Hundred Percent (100%) as non-wage damages to make them whole for emotional distress suffered and not to compensate them for lost wages or taxable compensation of any kind.  Named Plaintiffs and Class Members receiving a distribution from the Class Fund agree to indemnify and hold ITEC harmless for the foregoing tax treatment of monetary distributions and for any federal, state or local taxes owed by such person or persons by virtue of any distribution from the Class Fund.

64.    As a condition precedent to the receipt of any money under the provisions of this Decree, the Named Plaintiffs and Class Members must execute a release, as set forth in

33

Exhibits "C" and "D" respectively, and attached hereto.  This release shall be in addition but in no way shall limit the release contained in Paragraph 75 hereof.

65.   The Class Fund shall be distributed as follows:

A.   Fifteen Thousand and No/100 Dollars ($15,000.00) for the emotional distress suffered for his/her leadership throughout the preparation for and filing, litigation, and settlement of this lawsuit;

B.   Fifteen Thousand and No/100 Dollars ($15,000.00) for the emotional distress suffered for assuming the risks and notoriety related to being Named Plaintiffs in this class action litigation, including the potential liability for ITEC's taxable legal costs had ITEC litigated this action to a conclusion in its favor;

C.   Fifteen Thousand and No/100 Dollars ($15,000.00) for the emotional distress suffered in bringing to light the facts culminating in the filing and litigation of this class action;

D.   Ten Thousand and No/l00 Dollars ($10,000.00) paid to the certain Named Plaintiffs who are releasing their right to appeal the March 2, 2006 and May 15, 2006 Orders of the Court granting Summary Judgment for the emotional distress related to their individual claims of discrimination; and

E.   The balance to Named Plaintiffs and Class Members who timely submit and properly fill out Statement of Claim Forms as provided above.

66.   It shall be the sole responsibility of each Named Plaintiff and Class Member who seeks a monetary payment in this case to advise the Claims Administrator promptly of any change of address.  A Named Plaintiff's or Class Member's failure to keep the Claims

Administrator apprized of his/her current address may result in his/her request for monetary relief being denied.

### C.   Monetary Payments To Named Plaintiffs And Class Members

67.     For all claims of Named Plaintiffs and Class Members who properly fill out and timely submit a Statement of Claim form, the following will apply:

      A.     The Class Fund to be distributed to the Named Plaintiffs and Class Members is Four Million Five Hundred Thousand and 00/100 Dollars ($4,500,000.00), plus accrued interest.

      B.     In the event that there is monetary relief for Named Plaintiffs and Class Members that is not claimed from the Class Fund, each Named Plaintiff and class member are entitled to recover a monetary sum pursuant to this Decree shall receive a pro rata share of any such remaining monetary relief.  However, if in the sole discretion of Class Counsel, the remaining monetary relief, plus accrued interest, is so small that pro rata apportionment is inefficient and/or unduly burdensome, Class Counsel will contribute any such remaining monetary relief to Workplace Fairness.

### D.   Calculation Of Named Plaintiffs' And Class Members' Claims

68.     This Decree addresses and fully releases racial harassment claims for the following class of persons:

> All African-American employees of ITEC who, at any time since October 18, 1997 have been employed at ITEC's Indianapolis Plant.

69.     Claims of Named Plaintiffs and Class Members will be evaluated pursuant to guidelines which take into account consideration of, <u>inter</u> <u>alia</u>:

> Seniority at ITEC's engine plant in Indianapolis, Indiana; whether they filed an EEOC charge alleging racial harassment or the exposure to a racially-hostile work environment at ITEC's Indianapolis engine plant before September 19, 2006; whether they actually observed a noose at the engine plant; whether they

had a racial slur directed to them at the engine plant; whether they heard racial slurs directed to other African-Americans at the engine plant; whether they observed racial graffiti at the engine plant; whether they paid for a medical doctor to treat them for emotional distress, mental anguish, and pain and suffering due to the racial harassment and the racially-hostile work environment they were exposed to, and if so, the total amount of money paid for such medical treatment prior to September 19, 2006; whether they missed time from work from October 18, 1997 to September 18, 2006 due their racial harassment or their exposure to a racially-hostile work environment that can be verified by records of a licensed medical doctor; whether they were retaliated against for their involvement in this suit or for complaining about racial harassment at the engine plant; whether they provided deposition testimony in this case; whether they provided or were scheduled to provide testimony at trial; whether they provided an affidavit utilized as a part of the litigation of this case; whether they participated in class certification and mediation; whether they are executing a general release or a limited release.

### E.    Expedited Hearing Procedures For Resolution Of Class Members' Claims

70.    All claims of Named Plaintiffs and Class Members pursuant to this Decree shall be conclusively resolved through the following procedure:

A.    All Statement of Claim Forms must be postmarked on or before May 21, 2007 and must be received by the Claims Administrator at Administar Services Group, Inc. P.O. Box 56380, Jacksonville, Florida 32241-6380, unless excused by circumstances beyond the control of the Named Plaintiff or class member.  All Statement of Claim Forms must contain all of the required information.

B.    The Claims Administrator shall have the sole responsibility to evaluate each Statement of Claim Form submitted and determine whether a timely and valid claim has been stated and, if so, the monetary recovery to be received by each Named Plaintiff and Class Member in accordance with the terms of this Decree.  All costs and expenses of the Claims Administrator regarding administration of all claims shall be borne by ITEC up to a cap of $25,000.

C.     The Claims Administrator shall mail to each Named Plaintiff and each

Class Member who submits a timely and valid Statement of Claim Form a written statement

setting forth their monetary recovery under this Decree.  This written statement will be mailed

within ninety (90) days after the final approval of this Decree, unless a longer period of time is

necessary to evaluate the claims of the Named Plaintiffs and Class Members and make a final

decision regarding the extent of monetary recovery due to the Named Plaintiffs and Class

Members.

## XI.    ATTORNEYS' FEES, EXPENSES AND COSTS

71.     On the Final Approval Date, or at such other time as ITEC and Class Counsel

with the approval of the Court may agree in writing, the Attorneys' Fee Fund in the sum of

Four Million, Five Hundred Thousand and 00/100 Dollars ($4,500,000.00), plus all accrued

interest, shall be disbursed to class Counsel in full and final payment of all attorneys' fees,

experts' fees, expenses and costs of the Named Plaintiffs and Class up to the date of final

approval of this Decree, except for the attorneys' fees, costs and expenses attributable to the

following claims:

A.     Donna Jackson's training claim;
B.     Michael Ruggs' termination claim;
C.     Matthew Whitfield's hiring claim; and
D.     Gwen Moore's discipline claim which arose in connection
       with the meeting that occurred in late September of 2006.

72.     All legal fees, costs and expenses of monitoring the Decree, and all legal fees,

costs and expenses associated with the Oversight Committee and/or Monitors from the date of

final approval throughout the term of this Decree are not covered by the Attorneys' Fees Fund.

These legal fees, costs and expenses shall be borne by ITEC and shall be timely paid as set

forth in this Decree.

73.    ITEC shall have no further responsibility for attorneys' fees, costs or expenses up to the date of Final Approval upon the payment of the $4.5 million into a trust account as specified in Paragraphs 61 and 62, which payment occurred on October 6, 2006.

## XII.    LIMITATION OF CLAIMS

74.    The entry of this Consent Decree is in full and final settlement of any and all claims of the Named Plaintiffs and Class Members regarding racial harassment and exposure to a racially hostile work environment at ITEC's Indianapolis Plant prior to the Preliminary Approval Date of this Decree and for the Named Plaintiffs only, all other claims that they have against ITEC that have occurred during this time frame, with the limited exceptions noted in Paragraph 11 hereof.  The Release for the Named Plaintiffs is attached as Exhibit "C", and it is agreed that appropriate modifications will be made to Exhibit "C" to address the limited exceptions noted in Paragraph 11.  The Release for the class members is attached as Exhibit "D".  This Decree brings about a final and binding resolution of all racial harassment and racially hostile work environment claims of Named Plaintiffs and Class members covered within the scope of the class definition in this case and all of the claims of the Named Plaintiffs against ITEC.  Unless they opt out of this Consent Decree, a Named Plaintiff or Class Member may not independently assert his/her own claims of  racial harassment or exposure to a racially hostile work environment at ITEC's Indianapolis engine plant based on any acts or omissions by ITEC occurring up to the date of the preliminary approval of this Consent Decree by the District Court.

75.    The negotiation and entry of this Consent Decree have been undertaken by the Parties for the purpose of settling all claims of racial harassment and/or a racially hostile work environment that the Named Plaintiffs and the Class Members have brought against ITEC or could have brought in the suit being settled through entry of this Consent Decree.  Upon the

Final Approval Date, the Named Plaintiffs and all members of the Class who did not opt-out, both individually and as a class, for themselves, their attorneys, spouses, executors, representatives, heirs, successors, attorneys and assigns and any other person who could claim through them, in consideration for the monetary and injunctive relief set forth herein, the sufficiency of which consideration is expressly acknowledged, fully and finally release and forever discharge ITEC, its present and former parents, affiliated or subsidiary companies and each of their respective present, former and future officers, directors, shareholders, agents, employees, representatives, consultants, attorneys, successors and assigns and their respective pension, profit-sharing, savings and other employee benefit plans of any nature and those plans' fiduciaries, representatives, trustees and administrators from any and all past and/or present claims, rights, demands, administrative charges, complaints, actions, causes of action, obligations or liabilities of any and every kind for individuals relief and/or class injunctive and monetary relief (including without limitation all forms of front pay, back pay, compensatory and/or punitive damages) based upon any and all claims of racial harassment and/or a racially hostile work environment (whether known or unknown) that arose at the Indianapolis Plant before the Preliminary Approval Date, with the limited exceptions noted in Paragraph 11 hereof.

## XIII.   **RETENTION OF JURISDICTION**

76.    This Consent Decree will be effective and binding on the parties for a period of five (5) years immediately following final approval of this Consent Decree.  During this period, this Court shall retain jurisdiction of this case to assure that the terms and/or requirements of this Consent Decree are properly implemented and maintained.

## XIV.   CONFIDENTIALITY OF AWARDS

77.    Named Plaintiffs, Class Counsel and Class Members shall not disclose to anyone the amount of any individual settlement payment received under the terms of this Consent Decree, except that a person receiving a check may reveal the allocated settlement amount that he or she received to his or her spouse, accountant, financial advisor, tax advisor or attorney, who shall be informed by the person receiving the check of this confidentiality requirement and be bound by it.  Notwithstanding the foregoing, Class Counsel shall be permitted to discuss with any Named Plaintiff or Class Member the settlement payment made to any other Named Plaintiff or Class Member without violating this paragraph.

78.    Counsel for the Parties and the Parties themselves have jointly prepared the press release attached as Exhibit E hereto, which shall represent their joint statement on the lawsuit, the settlement and the Consent Decree.  Counsel for the Parties, in turn, agree that they shall not seek or solicit press coverage or media attention with respect to the lawsuit, the settlement and/or the Consent Decree.  Nothing contained herein, however, shall preclude counsel from addressing the lawsuit and/or the Consent Decree in connection with seminar presentations or other academic lectures.

79.    Within twenty (20) days of preliminary approval of the Consent Decree by the Court, the Plant Manager of the Indianapolis Plant shall issue the statement attached hereto as Exhibit E.

## XV.   MISCELLANEOUS

80.    This Consent Decree may be executed in counterparts, and shall be effective upon the execution of a counterpart by all parties.  Once each party has executed a copy of the Consent Decree, copies shall be exchanged and a copy of this agreement together with signature pages signed by all parties shall constitute a complete and binding agreement.

81.     The terms of this Decree shall be binding on the Named Plaintiffs, on Class

Members who do not opt-out as permitted herein, and on ITEC and the Unions and their

respective successors and assigns.

82.     This Decree constitutes the complete understanding among the Parties, including

the Named Plaintiffs and the Class members who do opt-out as permitted herein, with respect

to the matters herein.  The only obligations that shall be imposed on any party pursuant to this

Decree are those expressly set forth herein.  No additional obligations are to be imposed or

implied.

83.     All ITEC officers and directors, Indianapolis Plant Managers, Business Team

Leaders, Loss Prevention Supervisors, Human Resource Personnel must be fully informed by

ITEC of this Decree and its injunctive provisions.  In addition, all officers of the Unions must

also be fully informed of this Decree and its injunctive provisions.

84.     The Parties to this Decree, including the Unions, shall have an affirmative duty

to support this Decree and to refrain from any action which contravenes the purpose of this

Decree.  The Unions agree to cooperate with ITEC, the Oversight Committee and the Monitors

in the implementation of this Decree and agree to abide by the terms of the Decree and to not

impede the implementation of the Decree or ITEC's compliance with the Decree, provided,

however, that nothing contained in this Decree shall be in derogation of rights reserved by or

established in the current or future Collective Bargaining Agreements in effect at the

Indianapolis Plant or the NLRA.  Nothing in this Decree shall limit ITEC's or the Unions' right

to negotiate and bargain future Collective Bargaining Agreements; however, ITEC and the

Unions shall not negotiate, bargain, or agree to any terms in any such Agreements which cause

41

or have the effect of undermining or conflicting with the terms of or maintaining the integrity

and purpose of this Decree.

EXECUTED this _____ day of _____, 2007.

_____
Samuel Fisher, Sr.
Robert F. Childs, Jr.
Rocco Calamusa, Jr.
Kevin Jent
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 19th Street, North
Birmingham, Alabama 35203

_____
Fay Clayton
Angel M. Krull
Darlene M. Oliver
Robinson, Curley & Clayton, P. C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois  60606

_____
Richard D. Hailey
Ramey & Hailey
3815 River Crossing Parkway, Suite 340
Indianapolis, Indiana 46240

Attorneys for Named Plaintiffs and Plaintiff Class Members

_____
Mark S. Mester
B. John Casey
Latham & Watkins LLP
233 South Wacker Drive
Suite 5800 Sears Tower
Chicago, Illinois 60606-6401

Attorneys for International Truck and Engine Corporation,
f/k/a Navistar International Corporation

_____
Barry A. Macey
Nora L. Macey
Macey Swanson and Allman
445 N. Pennsylvania Street, Suite 401
Indianapolis, IN 46204-1800

Attorney for The United Automobile Aerospace & Agricultural Implement Workers of
America and its local unions, Local No. 98 and Local No. 2275

42

**DEFENDANT & JOINED PARTIES:**

International Truck and Engine Corporation

By: *Paula Smith*

Its: *Director HR Engine*

The United Automobile Aerospace & Agricultural Implement Workers of America and its local unions, Local No. 98 and Local No. 2275

By:_____

Its:_____

43

**DEFENDANT & JOINED PARTIES:**

| | |
|---|---|
| International Truck and Engine Corporation<br><br><br>By:_____<br><br>Its:_____ | International Union, United Automobile Aerospace and Agricultural Implement Workers of America (UAW)<br><br>By: *Maurice Davison*<br>　　Maurice Davison<br><br>Its:  Regional Director, UAW Region 3<br><br><br>Local 98, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)<br><br>By: *Dean Morris*<br>　　Dean Morris<br><br>Its:  President<br><br><br>Local 2274, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)<br><br>By: *Joan Roberts-Miller*<br>　　Joan Roberts-Miller<br><br>Its:  President |